1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

# DISTRICT OF NEVADA

7

\* \* \*

8

| | | |
|---|---|---|
| MARGARET OAKES, an individual, | ) | Case No.: 2:09-cv-01123-RLH-RJJ |
| Plaintiff, | ) | **O R D E R** |
| vs. | ) | (Motion for Summary Judgment–#18) |
| CARRABBA'S ITALIAN GRILL, LLC, a foreign corporation doing business in the State of Nevada; DOES I–X; and Roe Corporations I–X, inclusive, | ) | |
| Defendants. | ) | |

16        Before the Court is Defendant Carrabba's Italian Grill's **Motion for Summary**

17  **Judgment** (#18), filed March, 17, 2010.  The Court has also considered Plaintiff Margaret Oakes'

18  Opposition (#19), filed March 31, 2010, and Carrabba's Reply (#20), filed April 19, 2010.

19                                              **BACKGROUND**

20        This case involves a personal injury dispute arising from a meal Plaintiff Margaret

21  Oakes ate at Defendant Carrabba's Italian Grill.  On May 26, 2007, Oakes went to Carrabba's and

22  ordered "pescatore linguine," a pasta dish that includes mussels served in their shells.  During the

23  meal, Oakes choked on a mussel shell fragment.  She was taken to a hospital where she underwent

24  two surgeries to remove the shell.  On June 26, 2009, Oakes filed suit against Carrabba's alleging

25  claims for (1) negligence, (2) strict products liability, and (3) violation of the implied warranty of

26  merchantability.

AO 72
(Rev. 8/82)

1    On June 23, 2009, Carrabba's removed the case to this Court based on diversity of

2  the parties.  Carrabba's has now moved for summary judgment on all three of Oakes' claims.  For

3  the reasons discussed below, the Court denies Carrabba's Motion for Summary Judgment.

4                                          **DISCUSSION**

5  **I.      Legal Standard**

6    A court will grant summary judgment if "the pleadings, the discovery and

7  disclosure materials on file, and any affidavits show there is no genuine issue as to any material

8  fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An

9  issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could

10  find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit

11  under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  In

12  evaluating a motion, a court views all facts and draws all inferences in the light most favorable to

13  the nonmoving party.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

14    The movant bears the burden of showing that there are no genuine issues of

15  material fact.  Id.  "In order to carry its burden of production, the moving party must either produce

16  evidence negating an essential element of the nonmoving party's claim or defense or show that the

17  nonmoving party does not have enough evidence of an essential element to carry its ultimate

18  burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

19  (9th Cir. 2000).  Once the movant satisfies the requirements of Rule 56, the burden shifts to the

20  party resisting the motion to "set forth specific facts showing that there is a genuine issue for

21  trial."  *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The

22  nonmoving party "may not rely on denials in the pleadings but must produce specific evidence,

23  through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*

24  *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there

25  is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*,

26  475 U.S. 574, 586 (1986).

AO 72
(Rev. 8/82)

**II.      Motion for Summary Judgment**

      **A.      Negligence**

Oakes claims Carrabba's acted negligently when it failed to remove the shell fragment while preparing her meal.  To bring a negligence claim in Nevada, a plaintiff must show that (1) defendant owed plaintiff an existing duty of care; (2) defendant breached that duty; (3) defendant's breach was the legal cause of the plaintiff's injuries; and (4) damages.  *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).   The Court notes that California has held as follows: "it is a question for the trier of fact to determine whether the presence of the injury-producing substance was caused by the failure of the defendants to exercise reasonable care in the preparation of the food, and whether the breach of the duty to exercise such care caused the consumer's injury."  *Mexicali Rose v Superior Court*, 822 P.2d 1292, 1303 (Cal. 1992).

Carrabba's argues it is entitled to summary judgment because it took all possible care and followed all reasonably necessary steps when preparing Oakes' dish.  Oakes argues that Carrabba's could not have taken all possible care because it failed to spot and remove the fragment before serving the dish.  The Court agrees with California courts on this issue and finds that whether or not Carrabba's was negligent in failing to remove the shell fragment is a factual question that must be determined following a trial on the merits.  In order to determine whether Carrabba's breached its duty of care, the fact finder must weigh all of the relevant evidence that will be presented at trial.  For this reason, the Court denies Carrabba's Motion for Summary Judgment in regards to Oakes' negligence claim.

      **B.      Implied Warranty of Merchantability**

Oakes also claims that Carrabba's is liable for violating the implied warranty of merchantability.  Under the Nevada Uniform Commercial Code, "there is an implied warranty that a good is merchantable and suitable for a particular purpose." *Vacation Vill., Inc. v. Hitachi Am., Ltd.,* 874 P.2d 744, 747 (Nev.1994) (citing NRS §§ 104.2314-2315).  NRS 104.2314 describes merchantable goods as those which "[p]ass without objection in the trade under the contract

1    description; and in the case of fungible goods, are of fair average quality within the description;

2    and are fit for the ordinary purposes for which such goods are used." NRS § 104.2314.

3            Although Nevada does not specifically address this issue, various courts have

4    determined that the implied warranty of merchantability applies to transactions between a

5    restaurant and its customer. *Mix v. Ingersoll Candy Co.*, 59 P.2d 144, 145 (1936). California for

6    example has held that, "upon the sale of food[] by a retail dealer . . . an implied warranty ar[ises]

7    that the commodity [is] reasonably fit for such purpose and the dealer [sh]ould be held liable for

8    damage suffered as the result of eating the food[]." *Mix v. Ingersoll Candy Co.*, 59 P.2d 144, 145

9    (1936). Similarly, North Carolina has held, "a warranty that the goods shall be merchantable is

10   implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . .

11   [T]he serving of food or drink to be consumed either on the premises or elsewhere is a sale."

12   *Goodman v. Wenco Foods, Inc.,* 423 S.E.2d 444, 447-48 (N.C. 1992)

13           Three main tests have developed to determine what defines "merchantable" food:

14   the foreign/natural test, the consumer expectations test, and the hybrid test. *Mexicali Rose*, 822

15   P.2d at 1295-1302. Under the foreign/natural test, a restaurant is liable when it serves food that

16   contains a substance foreign to the type of food (for example a wire) and it is not liable if the

17   substance is natural (for example a bone in a chicken dish). *Id*. at 1294. The consumer

18   expectations test, on the other hand, bases liability not on whether the substance is foreign to the

19   dish, but whether a consumer could have reasonably expected the substance to be in the dish (for

20   example a half inch bone in a ground beef patty might be natural but not reasonably expected). *Id*.

21   at 1297-98., *Goodman*, 423 S.E.2d at 450-51. Finally, other courts including California, have

22   combined the foreign/natural test and the consumer expectations test and follow a hybrid model:

23

24           If the injury-producing substance is natural to the preparation of the food served, it
             can be said that it was reasonably expected by its very nature and the food cannot
             be determined unfit or defective. … By contrast, if the substance is foreign to the

25           food served, then a trier of fact additionally must determine whether its presence (I)
             could reasonably be expected by the average consumer and (ii) rendered the food

26

AO 72
(Rev. 8/82)

unfit for human consumption or defective under the theories of the implied warranty of merchantability or strict liability. *Id*. at 1301-02.

The Court notes that Nevada has not indicated which of the tests it follows. At this time the Court does not address which test Nevada would apply because a factual dispute exists that precludes summary judgment in any event. Oakes argues that the food was unmerchantable because the dish contained whole mussel shells, not shell fragments, and she could not have expected a shell fragment in the dish. On the other hand, Carrabba's argues that the fragment was natural to the dish because the dish contained mussels and mussel shells, and that Oakes should have reasonably expected that shell fragments could be in the dish because it contained mussel shells. Whether the presence of a shell fragment in the dish made the food unmerchantable is a factual determination. It is up to the jury to determine whether Oakes could have reasonably expected a shell fragment in her dish and whether a shell fragment in a dish containing whole shells is "natural." Accordingly, the Court denies Carrabba's Motion for Summary Judgment as to this claim.

### C.   Strict Products Liability

Finally, Oakes claims Carrabba's is liable under a theory of strict products liability because her food was defective. "To present a prima facie case for strict liability in tort, a plaintiff must establish that her injuries were caused by a defect in the product, and that the defect existed when the product left the defendant's control." *Madulike v. Agency Rent-A-Car*, 1 P.2d 24, 27 (1998). The Court notes that the same three tests that apply to the merchantability analysis are also used to determine what constitutes a "defect" for strict liability purposes. *Mexicali Rose*, 822 P.2d at 1295-1302.

The Court denies Carrabba's Motion for Summary Judgment on this claim. Without addressing which test Nevada is most likely to adopt, the Court finds that a question of fact exists as to whether or not a mussel shell fragment in a pasta dish with mussels constitutes a defect under each of the three tests. Thus, the same basic question of fact that exists as to Oakes'

claim for violation of implied warranty of merchantability also pertains to Oakes' strict products liability claim.  The Court therefore denies Carrabba's Motion for Summary Judgment on this claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#18) is DENIED

Dated: July 6, 2010.

**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)